UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUMBERTO S. LOPEZ, Trustee of the H.S.
LOPEZ FAMILY TRUST,

    Plaintiff,

v.

CAPITOL BANCORP LTD., a Michigan
corporation, and CAPITOL DEVELOPMENT
BANCORP LIMITED III, a Michigan
corporation,

    Defendants.
_____/

File No. 1:09-CV-814

HON. ROBERT HOLMES BELL

## OPINION

On September 2, 2009, Plaintiff filed a complaint requesting (1) a preliminary injunction preventing the expiration of an exchange offer initiated by Defendant Capitol Bancorp Ltd. ("CBC"), (2) damages under Section 11 of the Securities Act of 1933, and (3) a declaratory judgment that an amendment to Defendant Capitol Development Bancorp Limited III's ("CDBL-III") articles of incorporation violated a Michigan statute — Mich. Comp. Laws § 450.1615 — and was therefore invalid. (Dkt. No. 1.) Plaintiff asserted both federal question jurisdiction and diversity jurisdiction as its bases for federal court jurisdiction. (*Id.* at ¶¶ 9, 10.) The Court granted Plaintiff's motion for preliminary injunctive relief on September 21, 2009, but subsequently dissolved the injunction after determining that actions taken by the CBC board of directors on September 23, 2009, "abrogated

Plaintiff's irreparable harm as well as the need for a preliminary injunction." (Dkt. No. 30, at 7.) Because Plaintiff voluntarily dismissed his claim under Section 11 of the Securities Act of 1933 on October 9, 2009 (Dkt. No. 34), only Plaintiff's claim for declaratory relief remains. Though the declaratory judgment act gives federal courts the power to entertain declaratory judgment actions, it is not itself a basis for federal court jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Thus, Plaintiff's sole remaining claim is that Defendants violated Mich. Comp. Laws § 450.1615, a claim that is based on state statutory law. This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 45.)

There are two possible bases for federal subject matter jurisdiction over Plaintiff's remaining state law claim: supplemental jurisdiction and diversity jurisdiction. Defendants are correct to assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's claim. The general rule is that, where all federal claims are dismissed before trial, a district court should decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir 1992) ("Generally 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))). In this case, Plaintiff voluntarily dismissed its claim for damages under Section 11 of the Securities Act prior to trial, and the Court discerns no special circumstances that would justify a departure from the general rule disfavoring supplemental jurisdiction over the

2

remaining state law claim. However, Plaintiff does not seem to argue that the Court should exercise supplemental jurisdiction over its declaratory judgment action. Rather, Plaintiff argues that the Court should exercise original federal diversity jurisdiction over the declaratory judgment action.

A district court may exercise federal diversity jurisdiction over a state law claim if 1) there is complete diversity between the parties, and 2) the "amount in controversy" exceeds $75,000. 28 U.S.C. § 1332; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978). There is no dispute that Plaintiff and Defendants are completely diverse. Plaintiff is a resident of Arizona, and Defendants, both corporations, are residents of Michigan. Thus, the Court has original diversity jurisdiction over Plaintiff's state law claim as long as the amount-in-controversy requirement is met.

Two applicable rules guide the Court's assessment of whether the amount-in-controversy requirement is met in this case. First, diversity jurisdiction "is tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957). Thus, as long as the amount-in-controversy requirement is satisfied at the time Plaintiff brought his complaint, and in light of the claims and allegations set forth in Plaintiff's complaint, diversity jurisdiction is proper upon the filing of the complaint and thereafter. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) ("When determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed."). "Events occurring subsequent to the institution of suit which reduce the amount

recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938). Such "events" include the dismissal of claims alleged in the complaint, whether those claims are based on federal law or state law, and whether those claims are dismissed voluntarily or involuntarily. *Klepper*, 916 F.2d at 340 (citing 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (1985)); *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182 (6th Cir. 1993) ("We have held that where an action contained two claims, which together satisfied the jurisdictional amount requirement, and one count was eliminated following discovery, the fact that the only remaining claim was for less than the jurisdictional amount did not require dismissal.").

The second rule governing the Court's determination of whether the amount-in-controversy requirement is met is that the Court should generally defer to the Plaintiff's allegations regarding the amount in controversy set forth in the complaint. Plaintiff's allegations may be disregarded only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co.*, 303 U.S at 289. Thus, the Court is free to disregard the Plaintiff's allegations if it appears to a legal certainty that a claim is not worth the amount claimed, or if a claim is brought in bad faith solely for the purpose of conferring diversity jurisdiction on the district court. *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) ("Generally, the amount claimed by the plaintiff the complaint rules, as long as claimed in good faith . . . ."); *United Rentals (N. Am.) Inc. v. Keizer*, No. 1:00-CV-831-DWH, 2001 WL 35916111, at *3 (W.D. Mich. Mar. 13, 2001)

4

(unpublished) ("[T]he case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith.").

Plaintiff's complaint alleges two causes of action: a claim for damages under Section 11 of the Securities Act of 1933, and a claim for a declaratory judgment that Defendant CDBL-III's May 11, 2009, amendment violated Mich. Comp. Laws § 450.1615. Plaintiff's complaint also alleges that the amount in controversy exceeds $75,000. (Dkt. No. 1, at ¶ 10.) This allegation will be upheld unless it appears to a legal certainty that the amount in controversy resulting from Plaintiff's Section 11 claim and Plaintiff's claim for declaratory relief, taken together, does not exceed $75,000. *See St. Paul Mercury Indem Co.*, 303 U.S at 289. For purposes of this determination, it does not matter that Plaintiff voluntarily dismissed its Section 11 claim prior to trial, unless that voluntary dismissal suggests that Plaintiff originally brought the Section 11 claim in bad faith to confer federal jurisdiction. *See Jones*, 2 F.3d at 182.

The Court cannot say that, to a legal certainty, the amount in controversy resulting from Plaintiff's Section 11 and declaratory relief claims, taken together, does not exceed $75,000. The amount in controversy resulting from Plaintiff's declaratory judgment action alone appears to exceed the required amount. In declaratory judgment actions, the amount in controversy is measured by the "value of the object of the litigation." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). In this case, Plaintiff seeks a declaration that his Class B shares of CDBL-III stock converted to Class A shares on May

12, 2009, a conversion that would have increased Plaintiff's voting power in CDBL-III. The "object of the litigation" is Plaintiff's CDBL-III stock. Indeed, courts have held that, when a plaintiff brings a declaratory judgment action to protect his "right to exercise control over the corporation . . . the value of the controversy is at least the value of the plaintiff's share of the corporation." *Lapides v. Doner*, 248 F.Supp. 883, 895 (E.D. Mich. 1965); *see also Myers v. Long Island Lighting Co.*, 623 F. Supp. 1076, 1079 (E.D.N.Y 1985) ("[W]hen an individual stockholder seeks injunctive relief against a corporation the amount in controversy is the value of the plaintiff's stock . . . ."). At the time the complaint was filed, Plaintiff owned 250 shares of CDBL-III. The book value of these shares was approximately $915 per share, and the market value was approximately $484. The total book value of Plaintiff's shares was $228,750, and the total market value was $121,000. In either case, the "value of the object" of the declaratory judgment action exceeded $75,000.

However, even if the Court were to conclude that the value of the declaratory judgment action to Plaintiff did not itself exceed $75,000, the value of the declaratory judgment action is not the only amount in controversy to consider. The Court must also consider the amount in controversy resulting from Plaintiff's Section 11 claim. Defendants do not argue, and the Court does not believe, that Plaintiff brought his Section 11 claim in a bad faith attempt to satisfy the jurisdictional requirement.[1] Section 11(e) of the Securities

---

[1] In its opinion granting Plaintiff's motion for a preliminary injunction, the Court noted that Plaintiff was not likely to succeed on the merits of his Section 11 claim. (Dkt. No. 15, at 13-14.) This determination, however, does not equate to a determination that Plaintiff brought his Section 11 claim in bad faith.

Act of 1933 generally provides that damages under Section 11 are calculated by the difference between the amount paid for the security that is the subject of the registration statement, and the true value of that security at the time suit is brought. 15 U.S.C. § 77k(e). For a variety of reasons, without being adequately briefed on the issue, it would be extremely difficult, if not impossible, for the Court to calculate damages under this provision precisely. The Court can, however, hold with confidence that it does not appear "to a legal certainty" that Plaintiff's claim is for less than the jurisdictional amount. Rather, it is entirely possible that amount in controversy resulting from Plaintiff's Section 11 claim, especially when combined with the amount in controversy resulting from Plaintiff's declaratory judgment action, exceeds $75,000. Defendants themselves acknowledge that "[c]ertainly, Plaintiff's rights regarding the exchange offer [i.e., the Section 11 claim] may have been in excess of $75,000." (Dkt. No. 45, at 5.) Accordingly, the Court had, and continues to have, original diversity jurisdiction over this matter. An order consistent with this opinion shall be entered.

Dated: April 30, 2010                              /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE